UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOAO A. ENES                                          :
                                                      :
                    v.                                :        C.A. No. 05-417A
                                                      :
JO ANNE B. BARNHART,                                  :
Commissioner of the Social Security                   :
Administration                                        :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner
of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits
("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42
U.S.C. § 405(g).  Plaintiff filed his Complaint on October 7, 2005 seeking to reverse the decision
of the Commissioner or, in the alternative, to remand for further proceedings.  Plaintiff filed a
Motion for Summary Judgment on June 29, 2006.  The Commissioner filed a Motion for an Order
Affirming the Decision of the Commissioner on July 31, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings
and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon
my review of the entire record, independent legal research, and the legal memoranda filed by the
parties, I find that there is substantial evidence in the record to support the Commissioner's decision
and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that
the Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No.

8) be GRANTED and that Plaintiff's Motion for Summary Judgment (Document No. 7) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on December 18, 2002, alleging that he became disabled on November 1, 2001. (Tr. 109-111, 319-323). The applications were denied initially (Tr. 81, 83-86) and on reconsideration. (Tr. 82, 88-90). On October 12, 2004, a hearing was held before Administrative Law Judge Barbara F. Gibbs (the "ALJ"), at which Plaintiff, represented by counsel, a vocational expert appeared and testified. (Tr. 29-80). On March 17, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 18-28). The Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 7-9). A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence in that she had no basis for her determination that Plaintiff could perform "unskilled routine and repetitive work." Plaintiff contends that the record supports findings that he has a moderate limitation in maintaining concentration, persistence and pace, and a moderately severe impairment in the ability to respond to customary work pressure. Plaintiff argues that the ALJ erred in not making such findings.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff is not disabled within the meaning of the Act because he retains the RFC to perform jobs existing in significant numbers in the national economy.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  <u>Seavey</u>, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.     DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed

impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings

-8-

as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.   Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony can require remand so that the ALJ may "make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination

is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-four years old at the time of the ALJ hearing (Tr. 38-39) and was educated in Portugal.  Plaintiff has past relevant work as a construction laborer.  (Tr. 39, 121).

Plaintiff was admitted to Memorial Hospital of Rhode Island for shortness of breath on December 14, 2001.  (Tr. 183).  He complained of chest discomfort on deep breathing.  (Tr. 183). Plaintiff was admitted to intensive care with a question of infection with early sepsis superimposed on chronic cardiac disease.  (Tr. 184).  Cardiologic evaluation noted that the underlying condition was mitral stenosis with probable secondary pulmonary hypertension and tricuspid regurgitation. (Tr. 184).  A decision was made to plan for mitral valve replacement surgery.  (Tr. 185).  Plaintiff was placed on antibiotic therapy for infection, and transferred to Miriam Hospital on December 24, 2001 for mitral valve replacement.  (Tr. 185).  Cardiac catheterization performed at Miriam Hospital on December 24, 2001 revealed severe pulmonary hypertension and severe mitral sclerosis.  (Tr. 191-192).   On January 4, 2002, Plaintiff was discharged on intravenous antibiotics without undergoing surgery due to infection.  (Tr. 224).

Plaintiff was admitted again to Miriam Hospital on January 19, 2002.  (Tr. 199).  He had been attempting to complete a course of antibiotics prior to undergoing mitral valve replacement surgery but had experienced temperature spikes. (Tr. 199).  An echocardiogram on January 22, 2002 revealed severely thickened mitral valve leaflets with calcified tips, and moderate eccentric mitral

regurgitation with severe mitral stenosis. (Tr. 206). Plaintiff underwent mitral valve replacement surgery on February 6, 2002 and tolerated the procedure well. (Tr. 218-220). He was discharged on February 12, 2002. (Tr. 199).

Plaintiff saw Dr. James Schwartz for evaluation on March 18, 2002. (Tr. 225). Dr. Schwartz referred Plaintiff for dental work and instructed him as to diet, safety and exercise. (Tr. 225).

Dr. Peter Gibson administered a Treadmill Test to Plaintiff on July 15, 2002 which showed excellent exercise tolerance, a negative electrocardiogram response to maximal exercise, a low post-test probability of functionally significant coronary ischemia, and normal blood pressure response to exercise. (Tr. 193). An echocardiogram administered the same day showed normal overall left and right ventricular size and systolic function, normal aortic valve with trace aortic regurgitation, normally functioning mitral valve replacement, and trace tricuspid regurgitation. (Tr. 243).

Plaintiff returned to Dr. Gibson on July 24, 2002 and reported that he had recently worked all day installing vinyl siding on his house with no exertional discomfort. (Tr. 263). Plaintiff indicated that he experienced chest soreness after a day when he was particularly active. Id. Dr. Gibson characterized the July 15, 2002 exercise test and echocardiogram as "reassuring." Id. He suggested Plaintiff take Tylenol after particularly active days to help with chest discomfort. Id.

An echocardiogram administered on October 15, 2002 showed normal overall left and right ventricular size and systolic function, a well-seated mitral valve replacement, minimally thickened aortic valve, trace tricuspid regurgitation, and no significant change from the July 15, 2002 study. (Tr. 194).

Dr. Gibson noted on December 4, 2002 that he believed Plaintiff was clinically depressed. (Tr. 264). He noted that Plaintiff had been laid off from his job and was exhausting his savings to support his family. Id. Plaintiff complained of vague discomfort and weakness with hard work, and professed that he was not the same as he was prior to surgery. Id. Dr. Gibson stated that Plaintiff's last echocardiogram was "quite normal," and explained to Plaintiff that "from a heart standpoint, he really seem[ed] to be doing very well by all objective criteria." Id. Dr. Gibson referred Plaintiff back to Dr. Schwartz, and suggested that an antidepressant would be a reasonable intervention. Id.

On December 6, 2002, Plaintiff returned to Dr. Schwartz to discuss emotional difficulties. (Tr. 230). Plaintiff reported having tried unsuccessfully to return to work, and being worried that he could not return to his prior profession because word had spread about his cardiac surgery history. Id. Dr. Schwartz stated that Plaintiff "understands that he is actually not medically disabled and so therefore [Social Security disability benefits] is not an option." (Tr. 231). Plaintiff reported occasional melancholy, but denied chronic depression. Id. His concentration was still good and he was sleeping "fairly well," had a good appetite and had no outbursts. Id. Dr. Schwartz indicated that Plaintiff's emotional status, and concern over employability, were appropriate to his situation. Id.

A second Treadmill test administered on April 14, 2003 was stopped due to chest pain, but again showed excellent exercise tolerance, negative electrocardiogram response to submaximal exercise and normal blood pressure response to exercise. (Tr. 248).

On April 22, 2003, Dr. Gibson submitted a statement indicating that Plaintiff had chest pain not typical for coronary artery ischemia. (Tr. 249). He recounted Plaintiff's report of perceived

weakness and depression.  Id.  Dr. Gibson further stated, "While I think his perceptions about his own physical limitations are sincere, I cannot provide objective evidence to support his claims."  Id.

On June 6, 2003, Dr. Schwartz submitted a Pain Questionnaire and a Medical Questionnaire indicating that Plaintiff's pain and other symptoms were severe and that he could not perform full-time work on an ongoing basis.  (Tr. 260, 261-262).  Dr. Schwartz's notes for that day state that Plaintiff's test results suggest his heart was healthy and not at risk, even with prolonged strenuous activity.  (Tr. 294).  Dr. Schwartz indicated that although he believed Plaintiff could not return to his prior work in construction, "there [were] no medical contraindications to him engaging in other, less hazardous employment."  Id.

On August 7, 2003, Plaintiff's attorney sent him to Dr. Daniel S. Harrop for a psychiatric evaluation.  (Tr. 266-267).  Dr. Harrop noted that Plaintiff's "functional level is really quite deteriorated secondary to the physical disabilities."  (Tr. 266).  Plaintiff never had any psychiatric treatment or been prescribed medications for his nerves.  Id.  Dr. Harrop diagnosed adjustment disorder with depressed mood, further indicating that "he has undergone a significant change in his lifestyle, and that has not stabilized...and so the significant stressor continues."  (Tr. 267).  He reported that Plaintiff's Global Assessment of functioning ("GAF") was 55 at that time, with a high of 85.[1]  Id.  Dr. Harrop also completed a Supplemental Questionnaire As To Residual Functional Capacity, indicating that Plaintiff had severe limitations in his ability to relate to other people, to respond appropriately to co-workers and customary work pressures, and to perform repetitive or

---

[1] A GAF of 51 through 60 indicates "moderate difficulty in social, occupational, or school functioning;" a score of 81 through 90 indicates "good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

varied tasks, as well as a severe constriction of interests.  (Tr. 268-269).  Dr. Harrop also suggested moderately severe restrictions of daily activities, and moderately severe limitations of the abilities to understand, remember and carry out instructions, respond appropriately to supervision, perform simple tasks, and perform complex tasks.  Id.

Plaintiff followed up with Dr. Gibson on October 17, 2003.  (Tr. 288).  Plaintiff reported chest pain and other symptoms.  Id.  His physical exam was unremarkable.  Id.  A Holter monitor test earlier that month showed normal sinus rhythm with no arrhythmia to explain his chest pain or headaches.  Id.  Dr. Gibson did not recommend further evaluation of Plaintiff's chest pain in light of normal coronary artery anatomy documented by cardiac catheterization.  Id.

A July 12, 2004 Treadmill Test was stopped after nearly eight minutes due to dizziness, but showed good exercise tolerance, negative electrocardiogram response, and normal blood pressure response to exercise.  (Tr. 290).  An echocardiogram performed the same day showed a mildly dilated left atrium compared to a prior report.  (Tr. 291).

On September 24, 2004, Dr. Schwartz noted that Plaintiff had depression caused by chronic worry that he might die despite being informed that his stress testing was normal.  (Tr. 305).  Because Dr. Schwartz concluded that Plaintiff's depressive symptoms had worsened, his dose of paroxitine was increased.  (Tr. 306).  Dr. Schwartz referred Plaintiff to psychotherapy but there is no indication in the record that Plaintiff sought or obtained such treatment.  Id.  On that date, Dr. Schwartz also completed a Medical Questionnaire indicating that Plaintiff was suffering from severe symptoms including chest pain with exertion and depression, and that he could not sustain competitive employment on a full-time, ongoing basis.  (Tr. 307-308).

Plaintiff was referred by State Disability Determination Services ("DDS") to Dr. John Parsons for a psychological assessment on November 22, 2004.  (Tr. 309-315).  Throughout a battery of tests, Plaintiff's attention and concentration spans were appropriate, and he was not distracted.  (Tr. 310).  He informed Dr. Parsons that he found his prescribed psychotropic medications to be quite helpful.  (Tr. 312).  He admitted to being mildly depressed and worried about his health and ability to care for his family.  Id.  Plaintiff's response pattern to the Beck Anxiety Inventory indicated mild to moderate anxiety, while his responses to the Beck Depression Inventory suggested mild problems.  (Tr. 313).  Dr. Parsons indicated that Plaintiff "was able to attend, concentrate and focus without any significant impairment." (Tr. 313).  Dr. Parsons believed Plaintiff could function within the low average range of general intelligence.  (Tr. 314).  Dr. Parsons diagnosed anxiety disorder, not otherwise specified, and personality/developmental disorders.  (Tr. 315).  He assessed a GAF score of 60.  Id.  Dr. Parsons indicated that Plaintiff's "prognosis with treatment is largely contingent upon the resolution of his various health concerns."  Id.

Dr. Parsons also completed a Supplemental Questionnaire As To Residual Functional Capacity.  (Tr. 316-317).  In it, he indicated that Plaintiff's ability to respond to customary work pressures and to perform complex tasks was moderately severely limited, with moderate limitations in most other areas of functioning.  Id.

### A.   The ALJ's RFC Assessment is Supported by Substantial Evidence and Thus is Entitled to Deference

Plaintiff makes one claim of error arguing that the ALJ's finding that he could perform unskilled routine and repetitive work is not supported by substantial evidence.  The ALJ concluded that Plaintiff could not perform a full range of light work but could perform "unskilled, routine and

repetitive light work" with additional enumerated restrictions.  (Tr. 27, Findings 6 and 12).  Based on this RFC assessment and the VE's testimony (Tr. 76-78), the ALJ rendered a non-disability finding at Step 5.  (Tr. 26, 27-28, Finding 12).

Plaintiff does not contest the ALJ's findings as to his physical impairments (cardiovascular and headaches) but focuses his attack on the ALJ's assessment of his mental impairments (anxiety/depression).  Plaintiff argues that the "only mental limitation" found by the ALJ was a restriction to "unskilled, routine and repetitive" work.  Pl.'s Mem. at p. 7.  Plaintiff misstates the ALJ's finding.  In her decision, the ALJ strictly followed the "special technique" outlined in 20 C.F.R. § 416.920a for evaluating mental impairments.  (Tr. 22-23).  Following this technique, the ALJ concluded that Plaintiff had no more than mild limitations in activities of daily living and social functioning, no more than moderate difficulties with concentration, persistence or pace, and no evidence of episodes of deterioration or decompensation in work or work-like settings.  (Tr. 20, 22-23).  Based on these findings, the ALJ not only limited Plaintiff to "unskilled, routine and repetitive light work" but also restricted him from "concentrated exposure to hazards, including unprotected heights and dangerous machinery, pulmonary irritants...; or...climb[ing] ropes, scaffolds or ladders." (Tr. 25, 27 Finding 6).  Thus, the ALJ did not only limit Plaintiff to unskilled, routine and repetitive work as he argues.

In fact, it is apparent reviewing the record as a whole that the ALJ did give Plaintiff "the benefit of the doubt" in finding his mental impairment to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe" impairment is one that "significantly limits" one's physical or mental ability to do "basic work activities."  Id.  The record contains the opinion

(cited by the ALJ at Tr. 24) of a DDS Consultant, Dr. Jane Marks, who concluded that Plaintiff did not even have a "severe" mental impairment. (Tr. 270). Dr. Marks found that Plaintiff's mental conditions were only mildly limiting. (Tr. 280). The record also includes reports from a DDS Examiner, Dr. John Parsons, (Ex. 18F), and from a Consultant engaged by Plaintiff's attorney, Dr. Daniel Harrop (Ex. 12F). Both of these reports were appropriately considered by the ALJ.

The ALJ accurately noted that Dr. Harrop assessed Plaintiff's GAF at 55 and diagnosed an adjustment disorder with depressed mood. (Tr. 21, 267). She also noted Plaintiff's report that he "thinks a good deal, perhaps too much, about the difficulties the physical problems have caused him." (Tr. 266). The ALJ determined that Dr. Harrop attributed "virtually all of [Plaintiff's] limitations to his physical disabilities, rather than to mental impairments" and concluded that Dr. Harrop's diagnosis was based on reports made by Plaintiff about his physical impairment which are "not supported by objective evidence." (Tr. 23). The ALJ also found that Plaintiff's allegations regarding his limitations were "not totally credible" and explained her reasoning in the decision. (Tr. 24-25; 27 Finding 5). Plaintiff has not challenged this adverse credibility determination.

As to Dr. Parsons' report, the ALJ accurately notes that he assessed Plaintiff's GAF at 60 and found that he was able to attend, concentrate and focus without any significant impairment. (Tr. 22, 313). She also correctly notes that Dr. Parsons concluded that he worked at an average pace without distraction. (Tr. 23, 310). Dr. Parsons' report also reported that Plaintiff was able to perform activities of daily living without restriction. (Tr. 313).

The ALJ properly evaluated the reports of Drs. Parsons and Harrop and considered them against the totality of the record. Plaintiff argues that the ALJ simply "failed to discuss [this]

evidence." Pl.'s Mem. at p. 8.  Again, Plaintiff misstates the ALJ's decision.   As noted above, the

ALJ did discuss and evaluate the reports of Drs. Parsons and Harrop in her decision.  The ALJ also

properly evaluated Plaintiff's testimony and the report of Dr. Marks.  The ALJ articulated a

reasonable basis supported by the record for her RFC assessment and thus it is entitled to deference.

See Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (the resolution

of evidentiary conflicts is within the province of the ALJ).

While it is apparent that Plaintiff faced a difficult adjustment because of his transition out

of his long-term work as a construction laborer, that does not of itself entitle him to disability

benefits under the Act.  As correctly noted by the ALJ, the Act defines disability as the physical or

mental inability to engage in any substantial gainful activity.  (Tr. 18).  After reviewing the record

as a whole, this Court cannot say that the ALJ's nondisability finding is not supported by fact or law,

or that the explanation of her reasoning was legally inadequate.  Thus, the ALJ's decision must be

affirmed.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion for

Summary Judgment (Document No. 7) be DENIED.  Final judgment shall enter in favor of the

Defendant.

 /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 15, 2006